IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DENNIS B. LETVIN, | ) | CIVIL NO. 10-00539 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER: (1) GRANTING |
| | ) | DEFENDANT AMERA |
| vs. | ) | MORTGAGE CORPORATION'S |
| | ) | MOTION TO DISMISS |
| AMERA MORTGAGE | ) | COMPLAINT; (2) GRANTING |
| CORPORATION; NATIONAL CITY | ) | DEFENDANTS PNC MORTGAGE, |
| MORTGAGE COMPANY; | ) | A DIVISION OF PNC BANK, |
| NATIONAL CITY REAL ESTATE | ) | NATIONAL ASSOCIATION AND |
| SERVICES, LLC, sbm to NATIONAL | ) | PNC FINANCIAL SERVICES |
| CITY MORTGAGE INC., fka | ) | GROUP, INC.'S MOTION TO |
| NATIONAL CITY MORTGAGE | ) | DISMISS COMPLAINT; AND |
| COMPANY; NATIONAL CITY | ) | (3) GRANTING LEAVE TO |
| MORTGAGE INC.; PNC | ) | AMEND |
| MORTGAGE; PNC FINANCIAL | ) | |
| SERVICES GROUP INC.; JOHN | ) | |
| DOES 1-100, JANE DOES 1-100, AND | ) | |
| DOE CORPORATIONS, | ) | |
| PARTNERSHIPS AND OTHER | ) | |
| ENTITIES | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER: (1) GRANTING DEFENDANT AMERA MORTGAGE
CORPORATION'S MOTION TO DISMISS COMPLAINT; (2) GRANTING
DEFENDANTS PNC MORTGAGE, A DIVISION OF PNC BANK,
NATIONAL ASSOCIATION AND PNC FINANCIAL SERVICES GROUP,
INC.'S MOTION TO DISMISS COMPLAINT; AND (3) GRANTING
LEAVE TO AMEND**

# I.  **INTRODUCTION**

On September 21, 2010, Plaintiff Dennis B. Letvin ("Plaintiff") filed this action alleging claims against Defendants PNC Mortgage; PNC Financial Services Group Inc.; National City Mortgage Company; National City Real Estate Services, LLC, successor by merger to National City Mortgage Inc., fka National City Mortgage Company ("NCRES"); National City Mortgage Inc. (collectively "PNC")[1] and Amera Mortgage Corporation ("Amera") (collectively "Defendants") for violations of the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act of 1974 ("RESPA"), the Fair Credit Reporting Act ("FCRA"), the Equal Credit Opportunity Act ("ECOA"), and various state law claims stemming from a mortgage transaction concerning real property located at 14-5030 Hoolai, Pahoa, HI 96778 (the "subject property").

Currently before the court are Amera's and PNC's Motions to Dismiss, in which they argue that the Complaint fails to state a cognizable claim. For the reasons set forth below, the court GRANTS the Motions and dismisses the Complaint with leave to amend.

---

[1]  PNC explains that PNC Mortgage is a division of PNC Bank, National Association, successor by merger to NCRES.  *See* PNC Mot. at 2.

# II. BACKGROUND

## A. Factual Background

As alleged in the Complaint, Amera contacted Plaintiff about taking a loan on the subject property. Compl. ¶¶ 20, 22. Because Plaintiff was on a fixed disability income, Plaintiff requested, and Amera promised, that he would receive an affordable thirty-year fixed interest loan. *Id.* ¶¶ 24-26. Plaintiff ultimately signed a mortgage and note on the subject property. *Id.* ¶ 32. Although the Complaint includes no allegations regarding when this transaction occurred, it appears that Plaintiff signed the mortgage and note in the amount of $256,800 in March 2005. *See* PNC Ex. A.[2]

In consummating the loan, Amera allegedly did not (1) explain the terms of the loan or Plaintiff's consumer rights, (2) give Plaintiff time to review the loan documents, (3) tell Plaintiff the loan was being treated as a stated income loan transaction, (4) follow generally accepted underwriting guidelines in qualifying

---

[2] PNC requests the court to take judicial notice of various documents relevant to the claims in the Complaint, including the mortgage, the note, the assignment of the mortgage to NCRES, the Notice of Mortgagee's Intention to Foreclose Under Power of Sale, the Affidavit of Sale, and the Quitclaim Deed. *See* PNC Request for Judicial Notice, PNC Exs. A-F. In opposition, Plaintiff asserts that the documents are in dispute. *See* Pl.'s PNC Opp'n at 10. Because Plaintiff offers no explanation for why these exhibits are in dispute and given that almost all of them are public documents, the court takes judicial notice of PNC's Exhibits A and C-F. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (providing that a court may "take judicial notice of matters of public record outside the pleadings and consider them for purposes of a motion to dismiss") (quotations omitted).

Plaintiff for the loan, or (5) tell Plaintiff that he was not qualified for the loan

product, could not afford to make the payments, would likely default on the loan,

or that making late payments would be reported to various credit bureaus.  Compl.

¶¶ 30-40.  Plaintiff was also never given various documents, including an initial or

final truth in lending statement, a good faith estimate, a signed and dated loan

application, or a final HUD-1 Settlement Statement.  *Id.* ¶¶ 27-28, 54.

  As a result of the loan terms, Plaintiff suffered "extreme hardship,

anguish, and serious mental and emotional distress in struggling to make his loan

payments." *Id.* ¶ 43.  Plaintiff therefore sought relief from an unspecified "lender,"

who ignored him and later told him that the loan had been sold.  *Id.* ¶¶ 44-45.

Plaintiff attempted to contact "various defendants" to seek assistance in modifying

the loan terms and/or selling the property to preserve his investment, and they

failed to work with Plaintiff despite their indications to the contrary.  *Id.* ¶¶ 50-54.

In response to Plaintiff's requests, Defendants also failed to

(1) verify the debt, (2) establish a proper chain of title to the current owner or

holder of Plaintiff's note and mortgage, (3) conduct an audit, or (4) otherwise

respond to Plaintiff.  *Id.* ¶¶ 59-60.

  Finally, the Complaint asserts that Defendants failed to give Plaintiff

proper and timely notice that the subject property was being foreclosed upon or

that the property was sold.  *Id.* ¶¶ 63.  Although the Complaint does not identify the "Defendants" who foreclosed on the subject property (much less how any "Defendant" participated in the conduct above), an Assignment of Mortgage recorded in the Bureau of Conveyances on January 19, 2010 states that Mortgage Electronic Registration Systems, Inc., solely as nominee for Amera, transferred its interest in the mortgage to NCRES.  PNC Ex. C.  That same day, NCRES, whose address is c/o PNC Mortgage, a division of PNC Bank, N.A., recorded a Notice of Mortgagee's Intention to Foreclose Under Power of Sale.  PNC Ex. D.  On July 12, 2010, a Mortgagee's Affidavit of Foreclosure Under Power of Sale was recorded, stating that the subject property was sold to PNC Mortgage, a division of PNC Bank, N.A., for $282,696.56.  PNC Ex. E.  Finally, on November 23, 2010, a Mortgagee's Quitclaim Deed Pursuant to Power of Sale on the subject property was recorded.  PNC Ex. F.

## B.    Procedural Background

On September 21, 2010, Plaintiff filed this action.  The Complaint alleges claims titled (1) Violations of Federal Truth-In-Lending Act (Count I); (2) Violations of Real Estate Settlement Procedures Act (Count II); (3) Violation of Fair Credit Reporting Act (Count III); (4) Fraudulent Misrepresentation (Count IV); (5) Breach of Fiduciary Duty (labeled as Count VI); (6) Complaint to Quiet

Title (labeled as Count VII); (7) Mistake (labeled as Count VIII);

(8) Unconscionability (labeled as Count IX); (9) Unfair and Deceptive Acts or

Practices (labeled as Count X); (10) Failure to Act in Good Faith (labeled as Count

XI); (11) Negligent and/or Intentional Infliction of Emotional Distress (labeled as

Count XII); and (12) Violation of Equal Credit Opportunity [Act] (Regulation B)

(labeled as Count XIII).

On November 29, 2010, Amera filed its Motion to Dismiss, and

Plaintiff filed an Opposition on February 4, 2011. On February 9, 2011, PNC filed

its Motion to Dismiss, and Plaintiff filed an Opposition on February 23, 2011.

Replies were filed on April 11, 2011. A hearing was held on April 25, 2011.

## III.  STANDARDS OF REVIEW

**A.  Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss

a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans

Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must

accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 1950.

**B.      Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud." *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) (emphasis in original), *superseded on other grounds by* 15 U.S.C. § 78u-4.

In their pleadings, Plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement. *Id*. (citation and quotation signals omitted). Where there

are multiple defendants, Plaintiffs cannot "lump multiple defendants together" and instead must "differentiate their allegations [between defendants]." *Destfino v. Kennedy*, 630 F.3d 952, 958 (9th Cir. 2011) (citation omitted).  However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig*, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); *Walling v. Beverly Enter.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982).

///

///

# IV. DISCUSSION

PNC and Amera both argue that the Complaint should be dismissed for a variety of reasons, and the court addresses the parties' arguments in turn.

## A.    Failure to Plead Facts as to Each Defendant

As an initial matter, PNC argues that the Complaint fails to make any particular allegations as to any Defendant other than Amera and therefore fails to state a claim that is plausible on its face as to PNC.  *See* PNC Mot. 2-3.  PNC's argument is well-taken -- the Complaint asserts that Plaintiff received a mortgage from Amera, and then refers vaguely to subsequent "investors or purchasers of his loan," "banks and lenders," and "defendants," leaving completely unanswered how each Defendant participated in the post-mortgage events.  *See, e.g.*, Compl. ¶¶ 46-47, 49-50, 52-63.  For example, the Complaint does not explain to whom the mortgage and note were sold, which Defendants Plaintiff contacted to receive information and request loan modification, or even when any of these events occurred.  Given that the Complaint further lists as Defendants "John Does 1-100, Jane Does 1-100, and Doe Corporations, Partnerships and Other Entities 1-100," there is any number of possibilities of who was involved in the post-mortgage events.

In opposition, Plaintiff asserts that PNC's own exhibits show its

involvement with the foreclosure and purchase of the subject property, and discovery is necessary to determine the precise roles each Defendant played in the allegations of the Complaint. *See* Pl.'s PNC Opp'n at 15-16. The court rejects these arguments. Regardless of what PNC's exhibits may provide, there are no allegations in the Complaint directed to PNC in particular. Given that PNC's involvement with the subject property is a matter of public record, there is no reason Plaintiff could not include such facts in his Complaint. Further, given that many of the Complaint's allegations involve interactions Plaintiff had with Defendants (*e.g.*, Plaintiff notifying Defendants of issues with the origination of the loan and seeking loan modification, Compl. ¶¶ 52, 54), there is also no reason why Plaintiff cannot identify specific Defendants more particularly in the Complaint.

Accordingly, the court finds that as a general matter, the Complaint fails to state a claim as to any Defendant for conduct that occurred post-mortgage.

## B. Violations of Federal Truth-In-Lending Act (Count I)

Defendants both argue, among other things, that Plaintiff's TILA claims for damages and rescission are time-barred. The court agrees.

///

///

### 1.    *Damages under TILA*

Any claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  For violations of TILA's disclosure requirements, this one-year period generally begins to run from the date of consummation of the loan.  *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).  Equitable tolling may nonetheless apply in certain circumstances:

> [T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but . . . the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action.  Therefore, as a general rule, the limitations period starts at the consummation of the transaction.  The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

*Id.*  Where the basis of equitable tolling is fraudulent concealment, it must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.  *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999).

On its face, Plaintiff's TILA claim for damages is time-barred unless equitable tolling applies -- it was brought five years after consummation of the loan

transaction. With that said, however, the Complaint pleads no facts indicating that any Defendant prevented Plaintiff from discovering the alleged TILA violation or caused Plaintiff to allow the filing deadline to pass. *See, e.g.*, *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1112 (9th Cir. 2006) ("Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'") (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Without any factual allegations that support the inference that Plaintiff did not have a reasonable opportunity to discover the TILA violations, the Complaint, even when liberally construed, does not support tolling the statute of limitations. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (granting leave to amend complaint to allege lack of reasonable notice to establish diligence where the facts alleged did not foreclose lack of reasonable notice as a matter of law); *see also Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902-03 (9th Cir. 2003) (rejecting argument for equitable tolling of the TILA claim because plaintiff was in full possession of all loan documents and did not allege any actions that would have prevented discovery of the alleged TILA violations).

In opposition, Plaintiff asserts that he was "tricked" by Defendants when they concealed "the improprieties concerning the origination of his loan, colluded amongst themselves, failed to make important disclosures to him, and improperly foreclosed on the [subject property]." Pl.'s PNC Opp'n at 17. No such allegations appear in the Complaint, however, and even if they did, such allegations do not address when Plaintiff first learned of the TILA violations and why he did not learn of them earlier.

Accordingly, the court GRANTS Defendants' Motions as to Plaintiff's TILA claim for damages, but grants Plaintiff leave to amend.

**2.** ***Rescission under TILA***

Plaintiff's claim for rescission pursuant to TILA fails for two reasons.

First, rescission is not possible because the subject property has been sold. *See* PNC Ex. F. Specifically, TILA provides in relevant part that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ." 15 U.S.C. § 1635(f); *see also* 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first."). It does not matter if the sale

was not voluntary -- the Official Staff Commentary to Regulation Z explains that "[a] sale or transfer of the property need not be voluntary to terminate the right to rescind.  For example, a foreclosure sale would terminate an unexpired right to rescind."  Official Staff Commentary to Reg. Z, 12 C.F.R. § 226.23(a)(3); *see also Rodenhurst v. Bank of Am.*, --- F. Supp. 2d ----, 2011 WL 768674, at *7 (D. Haw. Feb. 23, 2011); *Valdez v. Flexpoint Funding Corp.*, 2010 WL 3001922, at *7 (D. Haw. July 30, 2010).

Second, any TILA claim for rescission is time-barred.  The right to rescission expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]"  15 U.S.C. § 1635(f).  Section 1635(f) is an absolute statute of repose barring "any [TILA rescission] claims filed more than three years after the consummation of the transaction." *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (citing *King*, 784 F.2d at 913).  As such, the three-year period is not subject to equitable tolling.  *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (stating that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period," even if a lender failed to make the required disclosures).  Plaintiff entered into the loan transaction in March 2005, and did not bring this action until more than five years later on September 21, 2010.  Plaintiff's claim for TILA rescission

therefore also fails as barred by the statute of limitations.

Accordingly, the court GRANTS Defendants' Motions as to the claim for rescission pursuant to TILA without leave to amend.

## C.    Violations of Real Estate Settlement Procedures Act (Count II)

In support of Plaintiff's RESPA claim, the Complaint asserts that "Amera accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed" in violation of 12 U.S.C. § 2607.[3]  Compl. ¶ 75.

Defendants assert that this RESPA claim is time-barred and the allegations otherwise fail to state a claim upon which relief can be granted.  The court agrees that the allegations of the Complaint are wholly conclusory and fail to state a claim that is plausible on the face of the Complaint.  Further, as pled, the claim appears time-barred.

Specifically, the statute of limitations for a § 2607 claim is one year from the date of the violation.  In particular, 12 U.S.C. § 2614 provides:

> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United

---

[3] Although it does not appear that Plaintiff is asserting a violation of any other RESPA provision, any possible claims for violations of 12 U.S.C. §§ 2603 or 2604 for failing to provide a "good faith estimate" or "uniform settlement statement" necessarily fail because there is no private cause of action for a violation of those sections.  *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 557 (9th Cir. 2010).

> States district court or in any other court of competent
> jurisdiction, for the district in which the property
> involved is located, or where the violation is alleged to
> have occurred, within 3 years in the case of a violation of
> section 2605 of this title and 1 year in the case of a
> violation of section 2607 or 2608 of this title from the
> date of the occurrence of the violation . . . .

Although the Ninth Circuit has not addressed the precise issue, other courts --

including this court -- have found that equitable tolling may apply to a RESPA

claim. *See Sakugawa v. IndyMac Bank, F.S.B.*, 2010 WL 4909574, at *4 (D. Haw.

Nov. 24, 2010) (citing cases).

As with Plaintiff's claim for damages under TILA, Plaintiff brought

this action well past the statute of limitations for RESPA violations. Any illegal

fee would have occurred in 2005; this action was filed in 2010. Moreover, the

Complaint includes no allegations suggesting that equitable tolling may apply.

Accordingly, the court DISMISSES Plaintiff's RESPA claim with

leave to amend.

## D.      Violation of Fair Credit Reporting Act (Count III)

The Complaint asserts that Defendants were "providers of information

to the credit reporting agencies," and "wrongfully, improperly, and illegally

reported negative information as to the Plaintiff to one or more reporting agencies,

resulting in Plaintiff having negative information on [his] credit reports and

lowering his FICO scores."  Compl. ¶¶ 77-78.

These allegations are insufficient to state a claim pursuant to the FCRA.  Pursuant to 15 U.S.C. § 1681s-2(a), furnishers of credit information have a duty to provide accurate information to a credit reporting agency.  *See also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009).  These duties are enforceable only by federal and state agencies.  *See id*; *see also Nelson v. Chase Manhattan Mortg. Corp*., 282 F.3d 1057, 1059-60 (9th Cir. 2002); 15 U.S.C. § 1681s-2(d) (noting that duties created under § 1681s-2(a) are enforced exclusively by the Federal agencies and officials and State officials).  An individual may bring a private cause of action only under 15 U.S.C. § 1681s-2(b), where the furnisher is given notice from a credit reporting agency of a dispute and fails to investigate within specified time limits.  *See also Nelson*, 282 F.3d at 1060.  In other words, "[i]t is only after (1) a consumer has notified a credit reporting agency of an inaccuracy, (2) the agency has notified the furnisher, and (3) the furnisher has failed to take action, that a consumer may sue the furnisher."  *See Diana I Am v. Nat'l City Mortg. Co.*, 2010 WL 571936, at *10 (D. Haw. Feb. 17, 2010).

The Complaint includes no allegations that Plaintiff complied with these prerequisites to bringing this claim -- Plaintiff does not assert that (1) he

notified any credit reporting agency of any inaccuracies in his credit report, (2) the

credit reporting agency notified any Defendant, or (3) that such Defendant, upon

notification, failed to investigate.  Accordingly, the court GRANTS Defendants'

Motion to Dismiss Plaintiff's claim for violation of the FCRA with leave to amend.

## E.     Fraudulent Misrepresentation (Count IV) and Mistake (labeled as Count VIII)

In support of the fraudulent misrepresentation claim, the Complaint

asserts that "Defendants or one of more of them" knowingly and intentionally

misrepresented and concealed material information during the consummation of

the loan, including, for example, Plaintiff's income, Plaintiff's assets, the appraised

value of the property, the failure to follow customary underwriting guidelines, and

the true terms of the loan.  Compl. ¶¶ 85-87.  Count VIII, titled "Mistake," pleads

in the alternative that if fraud is not found, the "the transaction was entered into

based upon mutual mistake which entitles Plaintiff to rescission of the note and

mortgage and reimbursement and/or recoupment of all monies that were paid . . . ."

*Id.* ¶ 105.

These allegations are insufficient to meet Plaintiff's burden under

Rule 8, much less the more rigorous requirements of Rule 9 that apply to claims of

fraud and mistake.  *See* Fed. R. Civ. P. 9(b) (requiring a party to state with

particularity the circumstances constituting fraud or mistake).  Instead, these

allegations merely give lip service to the basic elements of a fraud and/or mistake claim, and fail to assert "particularized allegations of the circumstances *constituting* fraud" or mistake such as the time, place, and nature of the alleged actions, and how each Defendant participated in the fraud and/or mistake. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1547-48. Indeed, the Complaint leaves completely unanswered precisely what actions each Defendant took that can form the basis of a fraud or mistake claim. *See also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (stating that Rule 9(b) requires a plaintiff to attribute particular fraudulent statements or acts to individual defendants).

In opposition, Plaintiff asserts that he "cannot allege further specific facts about exactly who, engaged in exactly what, prohibited activity, exactly when, or exactly where; that level of specific information will need to be gotten from defendants and others by way of [discovery]." Pl.'s PNC Opp'n at 20, 23. The court rejects this argument -- Plaintiff bases these claim on misrepresentations made during consummation of the loan; certainly Plaintiff can identify who he entered into the mortgage with, when this transaction took place, and how each Defendant made misrepresentations to him in that process.

The court therefore GRANTS Defendants' Motions as to Plaintiff's claims for fraudulent misrepresentation and mistake with leave to amend.

## F.     Breach of Fiduciary Duty (labeled as Count VI)

Count VI alleges (again without distinguishing between various Defendants) that Defendants owe Plaintiff a fiduciary duty as a result of "contracting to provide mortgage loan services and a loan program to Plaintiff," and breached that duty by "fraudulently inducing Plaintiff to enter into a mortgage transaction which was contrary to Plaintiff's [interests]." Compl. ¶¶ 93-94.

These allegations fail to state a claim against Defendants. In *McCarty v. GCP Mgmt., LLC*, 2010 WL 4812763 (D. Haw. Nov. 17, 2010), this court set forth a myriad of case law for the well-settled proposition that generally a borrower-lender relationship is not fiduciary in nature:

> Lenders generally owe no fiduciary duties to their borrowers. *See, e.g.*, *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 54 n.1 (Cal. App. 1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature."); *Miller v. U.S. Bank of Wash.*, 865 P.2d 536, 543 (Wash. App. 1994) ("The general rule . . . is that a lender is not a fiduciary of its borrower."); *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind. App. 1998) ("A lender does not owe a fiduciary duty to a borrower absent some special circumstances."); *Spencer v. DHI Mortg. Co.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ("Absent 'special circumstances' a loan transaction 'is at arms-length and there is no fiduciary relationship between the borrower and lender.'") (quoting *Oaks Mgmt. Corp. v. Super. Ct.*, 51 Cal. Rptr. 3d 561 (Cal. App. 2006)); *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 373 (D. D.C. 2008) ("[T]he relationship between a debtor

and a creditor is ordinarily a contractual relationship . . .
and is not fiduciary in nature.") (citation omitted).

*Id.*, at *5.

Given this rule, Plaintiff fails to state a claim for breach of fiduciary duty against Defendants.[4]  Nothing in the Complaint alleges "special circumstances" that might impose a fiduciary duty in this mortgage-lending situation against these Defendants.  *See, e.g.*, *Shepherd v. Am. Home Mortg. Servs., Inc.*, 2009 WL 4505925, at *2 (E.D. Cal. Nov. 20, 2009) ("Plaintiff cites no authority for the proposition that AHMSI or Deutsche owed a duty to not cause plaintiff harm in their capacities as servicer and [successor] to the original lender in ownership of the loan, respectively. . . .  In fact, loan servicers do not owe a duty to the borrowers of the loans they service.").

Accordingly, Count VIII is DISMISSED with leave to amend.

//

//

---

[4] Unlike lenders, brokers generally owe fiduciary duties to their clients.  *See, e.g.*, *Mortensen v. Home Loan Ctr., Inc.*, 2009 WL 113483, at *4 (D. Ariz. Jan. 16, 2009) (citing cases indicating that mortgage brokers have fiduciary duties to their clients); *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1119 (E.D. Cal. 2009) (same); *cf. Han v. Yang*, 84 Haw. 162, 172, 931 P.2d 604, 614 (Haw. App. 1997) ("A real estate broker is a fiduciary and consequently must exercise the 'utmost good faith, integrity, honesty, and loyalty,' and must diligently uphold a legally imposed duty of due care.") (citations omitted).  Because Plaintiff does not assert any allegations establishing that any of the Defendants were acting in the capacity as a broker, the court need not determine if Plaintiff could state a claim against a broker.

## G. Complaint to Quiet Title (labeled as Count VII)

Count VII alleges that Defendants' claims to the subject property "are without any right whatsoever, and said Defendants have no legal or equitable rights, claim, or interest in said property," Compl. ¶ 101, such that Plaintiff is entitled to a declaration that "the title to the subject property is vested in Plaintiff alone . . . ." *Id.* ¶ 102.

The court construes Plaintiff's claim as being brought under HRS § 669-1(a) ("[Quiet title] [a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."). Plaintiff, however, has not alleged sufficient facts regarding interests of various parties to make out a cognizable claim for "quiet title." Plaintiff has merely alleged elements of § 669-1, and thus the Count fails to state a claim. *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient.).

Further, in order to assert a claim for "quiet title" against a mortgagee, a borrower must allege he has paid, or is able to tender, the amount of indebtedness. "A basic requirement of an action to quiet title is an allegation that plaintiffs 'are the rightful owners of the property, *i.e.*, that they have satisfied their

obligations under the deed of trust.'" *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (quoting *Kelley v. Mortg. Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009). "[A] borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property." *Id.* (applying California law -- *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707, 33 Cal. Rptr. 2d 288, 290 (1994) ("[A] mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee.") (citation omitted), and *Rivera v. BAC Home Loans Servicing, L.P.*, 2010 WL 2757041, at *8 (N.D. Cal. July 9, 2010)). Applying this law here, which the court finds persuasive, Plaintiff has not indicated that he has paid his outstanding loan balance, much less that he is able to do so. In short, he fails to state a claim for quiet title.

Accordingly, Count XI is DISMISSED with leave to amend.

## H.      Unconscionability (labeled as Count IX)

The Complaint asserts that Plaintiff placed his trust and confidence in Defendants, who held superior bargaining power over Plaintiff, and as a result, "the terms and conditions of the note and mortgage are unconscionable." *See* Compl. ¶¶ 107-09.

"Unconscionability" is generally a defense to the enforcement of a

contract, and is not a proper claim for affirmative relief. *See, e.g.*, *Gaitan v. Mortg. Elec. Registration Sys.*, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009) ("Unconscionability may be raised as a defense in a contract claim, or as a legal argument in support of some other claim, but it does not constitute a claim on its own."); *Carey v. Lincoln Loan Co.*, 125 P.3d 814, 829 (Or. App. 2005) ("[U]nconscionability is not a basis for a separate claim for relief."); *see also Barnard v. Home Depot U.S.A., Inc.*, 2006 WL 3063430, at *3 n.3 (W.D. Tex. Oct. 27, 2006) (citing numerous cases for the proposition that neither the common law or the UCC allows affirmative relief for unconscionability).

To the extent unconscionability can be addressed affirmatively as part of a different -- that is, independent -- cause of action, such a claim "is asserted to prevent the enforcement of a contract whose *terms* are unconscionable." *Skaggs v. HSBC Bank USA, N.A.*, 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010) (emphasis in original).[5] *Skaggs* dismissed a "claim" for unconscionability because

---

[5] In *Skaggs*, this court noted in dicta that "at least one Hawaii court has addressed unconscionability when raised as a claim seeking rescission." 2010 WL 5390127, at *3 n.2 (citing *Thompson v. AIG Haw. Ins. Co.*, 111 Haw. 413, 142 P.3d 277 (2006)). The court did not mean to suggest that an affirmative claim for "unconscionability" without more is a proper cause of action. Even in *Thompson*, the operative complaint did not assert a separate *count* for rescission or unconscionability. *See Thompson*, 111 Haw. at 417, 142 P.3d at 281 (indicating the specific counts were for negligence, fraud, breach of duty, and unfair and deceptive trade practices under HRS § 480-2). In *Thompson*, the remedy of rescission was based on an independent claim.

it challenged only conduct such as "obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," but not any specific contractual term. *Id.* Likewise, the Complaint fails to challenge any particular term as unconscionable in an affirmative claim where the unconscionable terms may be relevant to that particular claim.

Accordingly, Count IX is DISMISSED with leave to amend.

## I.  Unfair and Deceptive Acts or Practices (labeled as Count X)

In support of Count X, the Complaint asserts that Defendants violated §§ 480-2 and 481A-3 by:

> 115.1.  Targeting financially unsophisticated and otherwise vulnerable consumers for inappropriate credit products.
>
> 115.2.  Failing to adequately disclose the true costs and risks of the subject loan and its inappropriateness for Plaintiff.
>
> 115.3.  Falsifying and/or disregarding the amount of Plaintiff's income and/or source of income.
>
> 115.4.  Failing to disclose that lender approved the subject loan based on Defendants' misrepresentation regarding Plaintiff's ability to repay the loan.
>
> 115.5.  Falsely representing the amount Plaintiff was required to pay.

115.6.  Making a loan that resulted in little net economic benefit to Plaintiff with the primary objective of generating fees.

115.7.  Making the subject loan based on the value of the Subject Property, without regard to Plaintiff's ability to repay the loan.

115.8.  Attempting to deprive Plaintiff of his legal right to cancel the subject loan.

Compl. ¶ 115.

Defendants argue, among other things, that Plaintiff's allegations fail because (1) they are insufficient to state a plausible claim for failure to meet the particularity requirements of Rule 9(b), and (2) this claim is time-barred as pled. The court agrees.

First, Rule 9(b)'s particularity requirement applies to state law causes of action.  Accordingly, where a Ch. 480 claim is based on fraudulent acts, a plaintiff must plead such claim with particularity.  *See Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010) (relying on *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009), to find that HRS Ch. 480 claims that sound in fraud must be pled with particularity).  As pled, it appears that at least some of Plaintiff's allegations in support of his Ch. 480 claim sound in fraud given that they assert Defendants' conduct is "immoral, unethical, oppressive, [and] unscrupulous," as well as "likely to mislead consumers acting reasonably under the

circumstances."  Compl. ¶¶ 118-19.  But none of the allegations asserts

"particularized allegations of the circumstances *constituting* fraud" such as the

time, place, and nature of the alleged fraud, and how each Defendant participated

in the fraud.  *See In re GlenFed, Inc. Sec. Litig.,* 42 F.3d at 1547-48.  Accordingly,

Plaintiff's allegations fail to meet Rule 9(b)'s particularity requirement.

Second, this claim appears to be time-barred.  Claims for violation of

§ 480-2 are subject to a four-year statute of limitations.  *See* HRS § 480-24(a)

(barring a chapter 480 claim "unless commenced within four years after the cause

of action accrues").  Because the cause of action here accrued in March 2005, the

four-year statute of limitations has run unless Plaintiff can take benefit of tolling

the statute of limitations.  *See, e.g.*, *Rundgren v. Bank of N.Y. Mellon*, --- F. Supp.

2d ----, 2011 WL 768800, at **5-7 (D. Haw. Feb. 28, 2011) (finding that claims

brought pursuant to Ch. 480 may take benefit of the fraudulent concealment

doctrine to toll the statute of limitations).  The § 480-2 claim was filed over a year

late, and the Complaint includes no allegations suggesting that equitable tolling

may apply.

Accordingly, Count VII is DISMISSED with leave to amend.  If

Plaintiff chooses to amend this claim, Plaintiff must clearly explain the basis of this

claim, and if based on fraud must meet the particularity requirements of Rule 9(b).

27

Plaintiff must also clearly allege a basis to toll the statute of limitations.

**J.      Failure to Act in Good Faith (labeled as Count XI)**

Count XI alleges that "Defendants owed Plaintiff a duty to deal with him in good faith and in a fair manner," and that Defendants breached that duty through the various alleged misdeeds described above.  Compl. ¶¶ 126-27.

This claim asserts the tort of "bad faith."  *See Best Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract).  But, although bad faith is an accepted tort where the plaintiff is a party to an insurance contract, the tort has not been recognized in Hawaii based upon a mortgage loan contract.  *See Jou v. Nat'l Interstate Ins. Co. of Haw.*, 114 Haw. 122, 129, 157 P.3d 561, 568 (Haw. App. 2007) (explaining that "the Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in [*Best Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996)] requires a contractual relationship between an insurer and an insured" (citations omitted)).

Moreover, although commercial contracts for "sale of goods" also contain an obligation of good faith in their performance and enforcement, this obligation does not create an independent cause of action.  *See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A.*, 459 F. Supp. 2d 1028, 1037-38 (D. Haw.

2006). And Hawaii courts have noted that "[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion." *Id.* at 1037 (quoting *Francis v. Lee Enters.*, 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)).

Finally, even assuming a bad faith tort exists outside the insurance context, it is well-settled that "[a] party cannot breach the covenant of good faith and fair dealing before a contract is formed." *Contreras v. Master Fin., Inc.*, 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n implied covenant relates only to the performance of obligations under an extant contract, and not to any pre-contract conduct.")). Hawaii follows this distinction. *See Young v. Allstate Ins. Co.*, 119 Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating the covenant of good faith does not extend to activities occurring before consummation of an insurance contract).

Because the Complaint alleges no "special relationship characterized by elements of fiduciary responsibility, public interest, and adhesion," the court finds that Plaintiff has failed to state a claim for bad faith. Further, Plaintiff's allegations regarding pre-contract activities (failing to disclosure terms, failing to

conduct proper underwriting, making an improper loan to Plaintiff), cannot be the basis of a claim for bad faith. *See id.*; *see also Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law.").

Accordingly, Count XI is DISMISSED, with leave to amend, if possible, to state a claim based on post-contract conduct that involves a "special relationship characterized by elements of fiduciary responsibility, public interest, and adhesion."

## K.    Negligent and/or Intentional Infliction of Emotional Distress (labeled as Count XII).

Count XII asserts that "Defendants owed Plaintiff a duty to avoid negligently and/or intentionally inflicting severe mental and emotional distress upon Plaintiff," through their various misdeeds in consummating the loan, causing Plaintiff to lose his savings, personal property, and investment and equity in the subject property, taking the subject property in foreclosure, and removing Plaintiff's personal property. Compl. ¶¶ 131-32.

Neither the allegations in Count XII nor the other portions of the Complaint sufficiently identify Defendants' conduct that supports this claim -- the allegations are simply too generalized and lacking in clarity to satisfy the

requirements of Rule 8, and as pled, it does not appear that PNC engaged in any conduct that would support a claim against it.  Further, as explained above as to Plaintiff's other claims, Plaintiff has failed to adequately allege any legally cognizable duty that Defendants may have to Plaintiff -- the Complaint fails to assert a claim for breach of fiduciary duty, bad faith, or any other claim for that matter.

Accordingly, the court DISMISSES this claim with leave to amend.

## L.  Violation of Equal Credit Opportunity [Act] (Regulation B) (labeled as Count XIII)

The Complaint asserts that Defendants "did not provide Plaintiff with signed and dated copies of the loan application and the appraisal report used to qualify Plaintiff for the subject loan," Compl. ¶ 137, which resulted in Defendants concealing "material misrepresentations in the loan application and appraisal report." *Id.* ¶ 138.

Under ECOA, "[e]ach creditor shall promptly furnish an applicant, upon written request by the applicant made within a reasonable period of time of the application, a copy of the appraisal report used in connection with the applicant's application for a loan that is or would have been secured by a lien on residential real property."  15 U.S.C. § 1691(e).  A claim for violation of EOCA must be brought no later than two years "from the date of occurrence of the

violation," 15 U.S.C. § 1691e(f), but equitable tolling may apply under certain circumstances. *See Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009).

The Complaint fails to assert a necessary prerequisite to Plaintiff's ECOA claim -- that Plaintiff made a written request for the appraisal report within a reasonable time of his application. Further, even if Plaintiff did include such an allegation, Plaintiff applied for this loan in March 2005 and the Complaint includes no allegations indicating that equitable tolling applies. The court therefore DISMISSES Plaintiff's ECOA claim with leave to amend.

## V.  **CONCLUSION**

Based on the above, the court GRANTS Defendants' Motions to Dismiss. If he so chooses, Plaintiff may file an amended complaint asserting claims against Defendants for all counts above except for a TILA rescission claim, by May 27, 2011. Failure to file a second amended complaint by May 27, 2011

//

//

//

//

//

will result in dismissal of this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 27, 2011.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Letvin v. Amera Mortg. Corp. et al.*, Civ. No. 10-00539 JMS/KSC, Order: (1) Granting Defendant Amera Mortgage Corporation's Motion to Dismiss Complaint; (2) Granting Defendants PNC Mortgage, a Division of PNC Bank, National Association and PNC Financial Services Group, Inc.'s Motion to Dismiss Complaint; and (3) Granting Leave to Amend